IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANSBAY AUTO SERVICE, INC. | No. C 09-04932 SI |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CHEVRON U.S.A. INC. | |
| Defendant. | |

Defendant's motion for summary judgment is currently scheduled for hearing on November 5, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court hereby DENIES defendant's motion.

**BACKGROUND**

Plaintiff Transbay Auto Service, Inc. leased a Chevron branded service station from defendant Chevron U.S.A., Inc. from 2001 until late 2008. Phelps Decl., Ex. B at 16:10–16:13, 20:11–20:15, 53:18–53:21; Ex. V (filed under seal).[1] In May 2008, defendant informed plaintiff that plaintiff's lease and franchise relationship would not be renewed. *Id.* Ex. Q (filed under seal). In September 2008,

---

[1] The parties have referred to a variety of sealed documents in the briefing of this motion. Where an exhibit discussed in this order was filed under seal, it is so noted. The parties are advised, however, that when this matter comes to trial, all exhibits used in the proceedings will be displayed, entered and/or filed in open court.

1 defendant offered to sell plaintiff its interests in the service station premises, including the real property, 2 improvements, fixtures, underground storage tanks and lines, and personal property for $2,375,700.00, 3 without the right to use the Chevron brand, or for $2,386,000 with the right to use the Chevron brand. 4 *Id.* Ex. R (filed under seal). Plaintiff elected to purchase the service station without the right to use the 5 Chevron brand.   *Id.* Ex. B at 54:5–54:7 (filed under seal).  On October 16, 2009, plaintiff filed this 6 lawsuit. *See* Compl. Plaintiff makes one claim, that defendant's offer was excessive and failed to 7 approach fair market value in violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. 8 §§ 2801, et seq. *See* Am. Compl.

9 The record contains evidence of four different appraisals, which estimated the fair market value 10 of the service station at $3,240,000 (the February Deloitte Appraisal), $2,520,000 (the PSG Appraisal), 11 $2,386,000 (the July Deloitte Appraisal), and $1,800,000 (the Plaine Appraisal). Phelps Decl. Exs. T 12 (PSG), X (Plaine), Y (July Deloitte) (filed under seal); Childress Decl. Ex. E (February Deloitte)(filed 13 under seal). The February and July Deloitte Appraisals were each prepared on behalf of defendant. 14 Phelps Decl. Ex. Y (filed under seal); Childress Decl. Ex. E (filed under seal). The Plaine Appraisal was 15 prepared at the request of plaintiff in connection with this litigation. Phelps Decl. Ex. X (filed under 16 seal). The PSG Appraisal was prepared at the request of America California Bank when America 17 California Bank was reviewing plaintiff's loan application to purchase the service station. Phelps Decl. 18 Ex. B at 59:10–59:12, 60:6–60:7, 66:11–66:15, 67:3–67:9; Ex. T at 1 (filed under seal).

19 Plaintiff has also presented evidence in the form of expert declarations and depositions, 20 challenging the accuracy and methodology of the first three appraisals and specifically isolating one 21 factor that it believes could account for the entirety of the discrepancy between the July Deloitte 22 Appraisal and the Plaine Appraisal. Andrew Plaine has indicated that he will testify that the two 23 Deloitte appraisals are unreliable, in part because large differences between the final figures cannot be 24 accounted for by the small differences in input figures and assumptions made. Plaine Decl. 2–15; *see* 25 *also id.* at 8–9, ¶ 24 ("[W]hat is apparent in comparing and contrasting the two [Deloitte] appraisals is 26 that there are radically different results in the land valuation suggesting that the analysis is largely based 27 on the brokers opinions of value."). Plaine will also testify that the PSG analysis appears unreliable, 28 *id.* at 15, ¶ 44, and that the July Deloitte Appraisal is too high because it fails to account for the cost and

2

1  difficulty of obtaining permission to convert the service station to another use even though it concludes
2  that the "highest and best use" of the property is as something other than a service station. *See id.* at 8,
3  ¶ 23 ("The conversion ordinance significantly affects the value of service station properties in San
4  Francisco because it places restrictions on the ability to convert a service station property to another use,
5  and the process to get a conversion approved (if at all) is costly and may take several years."). Another
6  expert, Andrew Junius, is prepared to testify that, while it is possible to obtain permission to convert a
7  service station to another use, it may take two to three years to obtain approval to do so, with soft costs
8  (application fees, attorneys, and consultants) totaling $500,000 or more. Phelps Ex. W at 6 (filed under
9  seal). Plaintiff has also presented evidence that competent appraisers, relying on the same information
10 and considering the same conditions, would be expected to arrive at appraised values within five or ten
11 percent of each other. Childress Decl. Ex. C at 40:1–40:12 (filed under seal).

12 On October 1, 2010, defendant filed this motion for summary judgment. Plaintiff and defendant
13 have raised several evidentiary objections.

### LEGAL STANDARD

16 Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file,
17 and any affidavits show that there is no genuine issue as to any material fact and that the movant is
18 entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial
19 burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477
20 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the
21 non-moving party will have the burden of proof at trial. The moving party need only demonstrate to
22 the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

23 Once the moving party has met its burden, the burden shifts to the non-moving party to "set out
24 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry
25 this burden, the non-moving party must "do more than simply show that there is some metaphysical
26 doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,
27 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be
28 evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty*

3

*Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(e).

## DISCUSSION

### I. Petroleum Marketing Practices Act

This action involves the Petroleum Marketing Practices Act. "Recognizing the vast disparity in bargaining power between franchisors and franchisees in the petroleum industry, Congress enacted the PMPA in an attempt to level the playing field on which these parties interact." *Beachler v. Amoco Oil Co.*, 112 F.3d 902, 904 (7th Cir. 1997). As the Ninth Circuit has observed, "[t]he overriding purpose of Title I of the PMPA is to protect the franchisee's reasonable expectation of continuing the franchise relationship." *Ellis v. Mobil Oil*, 969 F.2d 784, 788 (9th Cir. 1992). To this end, the Act provides franchisees with certain protections against arbitrary termination or non-renewal. *See Darling v. Mobil Oil Corp.*, 864 F.2d 981, 983 (2d Cir. 1989) (the "overriding purpose" of the PMPA is to provide "'protection for franchisees from arbitrary and discriminatory terminations or nonrenewals'" (*quoting* S. Rep. No. 95-731 at 15, *reprinted in* 1978 U.S.C.C.A.N. 873, 874); *Harris v. Equilon Enters., LLC*, 107 F. Supp. 2d 921, 924 (S.D. Ohio 2000) ("Congress enacted the PMPA in 1978 to protect franchisees from arbitrary or discriminatory termination or nonrenewal of their franchises."). One such protection is the requirement that a franchisor which has elected to terminate or non-renew for business reasons must make "a bona fide offer to sell, transfer or assign" its interest in the premises to the franchisee. 15 U.S.C. § 2802(b)(3)(D). The bona fide offer provision " 'assur[es] the franchisee an opportunity to continue to earn a livelihood from the property while permitting the distributor to end the franchise

4

relationship.' " *Sandlin v. Texaco Refining & Mktg., Inc.*, 900 F.2d 1479, 1481 (10th Cir. 1990) (*quoting Slatky v. Amoco Oil Co.*, 830 F.2d 476, 484 (3d Cir. 1987)).

The provisions of the PMPA must be "given a liberal construction consistent with its goal of protecting franchisees." *Hilo v. Exxon Corp.*, 997 F.2d 641, 643 (9th Cir. 1993).

## II. Fair market value analysis under the PMPA

At issue in this case is whether defendant complied with the PMPA provision requiring a franchisor seeking to sell a service station to make a bona fide offer to sell to the franchisee. 15 U.S.C. § 2802(b)(3)(D)(iii). A bona fide offer under the PMPA is measured by an objective market standard. "To be objectively reasonable, an offer must approach[ ] fair market value." *Ellis v. Mobil Oil*, 969 F.2d 784, 787 (9th Cir. 1992) (alteration in original) (internal quotation marks omitted). "The value of that offer should reflect what a willing purchaser would pay for the fee title of the land, the improvements and the equipment of a terminated franchise." *Id.* The Third Circuit has explained that a "range of prices" may have a "reasonable claim[ ] to being [i.e., approaching] fair market value." *Slatky*, 830 F.2d at 485; *see also id.* ("Were we to mandate that courts determine whether the distributor's offer actually was at fair market value, distributors could rarely rest comfortably that their offer would eventually be determined by the court to be fair market value.").

Several courts, though not the Ninth Circuit, have discussed how to analyze the "approach[] fair market value" rule in the context of a motion for summary judgment, concluding that certain, small discrepancies between a plaintiff's estimate of the fair market value of the property and a defendant's offer may not create a genuine issue of material fact. The Tenth Circuit, for example, held in one case that there was no genuine issue of material fact where the offering price fell right in the middle of a high and low estimate that themselves only differed by about 17%, but in another case that a 70% variation in valuation did preclude summary judgment. *Compare Sandlin*, 900 F.2d at 1482 & n.2 *with Rhodes v. Amoco Oil Co.*, 143 F.3d 1369, 1374 (10th Cir. 1998). One Central District of California court granted a defense motion for summary judgment where an offer fell between two estimates that varied by 16% or 19%. *See Anand v. BP W. Coast Products LLC*, 484 F. Supp. 2d 1086, 1097 (C.D. Cal. 2007); *see also id.* at 1096 ("Because a range of prices may reasonably be found to approach fair market

5

value, the mere fact that the parties have submitted competing appraisals and/or offers does not necessarily preclude the entry of summary judgment in one party's favor."). Another Central District of California case found a difference of 25% between the offer and plaintiff's valuation, and a difference of 18% between the offer and an offer to a third party, did create a triable issue of fact. *Kamel v. Equilon Enters., LLC*, No. CV 00-10433 MMM (Ex), at 18 (C.D. Cal. Dec. 31, 2001).[2]

### III.    Questions for resolution on summary judgment

Plaintiff's theory of the case is that the fair market value of the service station premises is $1,800,000, which is 24% less than the $ 2,375,700 selling price offered by defendant Chevron. Put another way, plaintiff asserts that Chevron's $ 2,375,700 selling price is 32% higher than plaintiff's asserted fair market value. Under these circumstances, plaintiff asserts, Chevron did not make a bona fide offer to sell to the franchisee, in violation of the PMPA. Chevron disputes plaintiff's claims.

In their motion papers, the parties offered a variety of evidence in support of their respective positions, and each has disputed the admissibility of the evidence offered by the other. Before deciding the motion itself, therefore, the Court must address the evidentiary objections made.

#### A.    Evidentiary objections

##### 1.    The PSG Appraisal

Defendant wishes to use the PSG Appraisal as evidence of the truth of its contents. Plaintiff objects to the admissibility of the PSG Appraisal, arguing that it is unauthenticated and that it is hearsay that does not fall within any exception to the hearsay rule.

The PSG Appraisal states that it was prepared for America California Bank by the Property Sciences Group, Inc. Phelps Decl. Ex. T at 1 (filed under seal). It states that it was prepared between September 17, 2008 and October 8, 2008. *Id.* (filed under seal). It then proceeds to conclude that the "highest and best use" of the property is as a service station and to appraise the property at a value higher than the purchase price. *Id.* at 41 (or CPB 0050) (filed under seal).

---

[2] Plaintiff requests that judicial notice be taken of the opinion in *Kamel*. There is no need for the Court to take judicial notice of a statement of federal law in a federal court case.

6

America California Bank evidently rejected plaintiff's loan application but gave plaintiff back a package of loan documents, including a copy of the PSG Appraisal. Plaintiff then submitted the package of loan documents, with the PSG Appraisal, to other banks, including the bank (California Pacific Bank) which ultimately provided plaintiff with a loan. Phelps Decl. Ex. B at 59-60, 66-67. Defendant received a copy of the PSG Appraisal directly from California Pacific Bank, not from plaintiff. Phelps Decl. ¶ 22 (filed under seal).

Mike Tsachres, president of plaintiff Transbay Auto Service, stated in a declaration that "[a]t no time since Transbay closed escrow on the subject real property and service station in November 2008 was I or any of Transbay's attorneys in possession, custody or control of the PSG Appraisal," and he stated that he has not read the PSG Appraisal and does not know whether the contents are accurate. Tsachres Decl. ¶ 3. Plaintiff's attorney states that she first saw the PSG Appraisal at the Junius deposition on September 22, 2010. Childress Decl. ¶ 8 (filed under seal). She states that she showed Plaine a copy of the PSG Appraisal that same day, just prior to his own deposition. *Id.* ¶ 9.

During Plaine's deposition, he testified that plaintiff's attorney had just showed him a copy of the PSG Appraisal, and that she said something to the effect of, "because of loan applications made when Mike bought the property, he had to get a loan, and this was one of the appraisals." Phelps Decl. Ex. D at 48:20–49:10 (filed under seal).

Defendant wishes to use the PSG Appraisal as evidence of the truth of its contents, to which plaintiff objects. If the PSG Appraisal is admitted, plaintiff wishes to use expert testimony to challenge the PSG Appraisal's conclusions regarding the value of the service station. Defendant objects to plaintiff's expert's analysis of the PSG Appraisal as untimely and undisclosed, and also argues that plaintiff should be estopped from calling the PSG Appraisal unreliable after relying on it to obtain a loan. Defendant objects to evidence regarding plaintiff's awareness of the PSG Appraisal, consisting of the above-quoted paragraph of the Tsachres Declaration, which defendant says is a sham; and defendant objects to Tsachres's statement that he has not read the PSG Appraisal as irrelevant.

7

### a. Authentication

Defendant argues that Tsachres's statements during his deposition served to authenticate the PSG Appraisal, as did plaintiff's attorney's statements to Plaine that Plaine recounted during his deposition, and that the contents of the document itself bolsters these authentications. Plaintiff argues that neither Tsachres nor plaintiff's lawyer had the capacity to authenticate the PSG Appraisal.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Ev. 901(a). For example, testimony by a witness with sufficient knowledge that a document is what it is claimed to be can be sufficient to authenticate a document. *Id.* 901(b)(1). Or it can be authenticated based upon "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." *Id.* 901(b)(4). "FRE 901 does not require personal knowledge of a document's creation." *United States v. Estrada-Eliverio*, 583 F.3d 669, 673 (9th Cir. 2009). "The issue for the trial judge under Rule 901 is whether there is prima facie evidence, circumstantial or direct, that the document is what it is purported to be. If so, the document is admissible in evidence." *Alexander Dawson, Inc. v. N.L.R.B.*, 586 F.2d 1300, 1302 (9th Cir. 1978).

Here, defendant received the PSG Appraisal from the bank that accepted plaintiff's loan application. The PSG Appraisal itself states that it was done on behalf of another bank that rejected plaintiff's loan application. Tsachres testified at his deposition that he received the PSG Appraisal from the rejecting bank and gave it to the accepting bank. By all accounts, including its own, the PSG Appraisal is an appraisal of the value of the service center, and plaintiff's expert has analyzed it as such. This is sufficient to authenticate the document.

### b. Hearsay exceptions

Plaintiff argues that the PSG Appraisal is inadmissible hearsay. Defendant responds that it is an adoptive admission and therefore not hearsay under Rule 801(d)(2)(B), and/or it falls within Rule 807's residual hearsay exception.

An adoptive admission is "a statement of which the party has manifested an adoption or belief in its truth," and it can be offered against the party making the admission. Fed. R. Civ. P. 801(d)(2)(B).

8

"[B]efore letting in evidence as an adoptive admission, 'the district court must first find that sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant did actually hear, understand and accede to the statement.'" *United States v. Orellana-Blanco*, 294 F.3d 1143, 1148 n. 10 (9th Cir. 2002) (quoting *United States v. Monks*, 774 F.2d 945, 950 (9th Cir. 1985) (discussing adoption by silence)); *see also* Jones, Rosen, Wegner & Jones, Rutter Group Practice Guide: Federal Civil Trials & Evidence § 8:2045 (The Rutter Group 2010) ("Knowledge of the statement and its contents is ordinarily essential.").

Here, the facts are conflicting as to whether Tsachres read, understood, and acceded to the PSG Appraisal on plaintiff's behalf. That plaintiff gave the PSG Appraisal to banks as part of his loan application would generally indicate that he adopted the contents of the report, at least for the purposes of Rule 801. On the other hand, his declaration (to which defendant objects) stating that he never actually read the PSG Appraisal tends to indicate that he did not adopt the contents of the report. *See* Fed. R. Ev. 104(a) (in ruling on the admissibility of evidence, the Court "is not bound by the rules of evidence except those with respect to privileges"). For purposes of ruling on this evidentiary objection, the Court need only decide whether there is enough evidence for a jury reasonably to conclude that the plaintiff adopted the statement. On this record, there is enough such evidence, albeit disputed. The Court finds that the PSG Appraisal is admissible as an adoptive admission and plaintiff's objections are overruled.

### c. Expert analysis

Defendant argues that Plaine's declaration regarding his opinions of the PSG Appraisal should not be considered by the court because they are untimely and improper. In particular, defendant argues that the analysis was not disclosed in the initial expert report, and the expert was not prepared to discuss the PSG Appraisal at his deposition. (Defendant acknowledges that the declaration is dated October 15, 2010, the expert discovery cutoff date.) Defendant also argues that it is improper for plaintiff to criticize an appraisal upon which it relied for financing. Plaintiff argues that any failure to comply with the requirements of Rule 26 were substantially justified because defendant belatedly produced the PSG Appraisal and did not inform plaintiff that it was intending to rely on the PSG Appraisal until it filed

9

1 this motion for summary judgment. Plaintiff explains that it has no intention of relying on the PSG
2 Appraisal; rather, the expert testimony is intended to rebut the reliability of the evidence if relied upon
3 by defendant.

4 Federal Rule of Civil Procedure 26 provides the procedures governing disclosure of expert
5 witnesses, including when an expert's report must be disclosed (Rule 26(a)) and when it must be
6 supplemented or amended based on material new information (Rule 26(e)). Rule 37 outlines
7 consequences of failure to abide by the requirements of Rule 26. The case law provides guidance to
8 courts on how to address discovery violations. Among the factors that may properly guide a district
9 court in determining whether a violation of a discovery deadline is justified or harmless are: (1)
10 prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to
11 cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved
12 in not timely disclosing the evidence. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).
13 "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti*
14 *by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

15 Here, the expert discovery cutoff date was October 15, 2010. Doc. 35. Although Plaine's
16 analysis of the PSG Appraisal was not disclosed in his initial written report, it was disclosed by the
17 discovery deadline, when plaintiff filed a copy of the declaration as part of its opposition to this
18 summary judgment motion. *See* Doc. 51. Even if this was insufficient to satisfy the requirements of
19 Rule 26(e), the Court finds that any violation of Rule 26 was harmless. Plaintiff has presented evidence
20 that neither the party nor its attorneys were sufficiently aware of the PSG Appraisal to have wilfully
21 violated any rules of discovery by not turning it over to defendant. Plaintiff has presented evidence that
22 neither it nor its expert were sufficiently aware of the PSG Appraisal before Plaine's deposition for him
23 to be prepared to discuss the PSG Appraisal at his deposition. Actual disclosure of Plaine's analysis has
24 taken place sufficiently early so as not to disrupt the trial. The only possible prejudice to defendant of
25 the late expert disclosure is that defendant was unable to depose Plaine regarding his analysis of the PSG
26 Appraisal. However, plaintiff has presented evidence that it was not aware of the PSG Appraisal at all
27 until one hour before the Plaine deposition, let alone that defendant intended to rely upon it. Even if
28 plaintiff had submitted a supplemental expert report quickly, it would not have been early enough for

10

Plaine to be deposed on the matter. Any expert discovery violation is harmless.

Any allegation that it is improper for plaintiff to rely on the PSG Appraisal to obtain a loan but then criticize it during subsequent litigation goes to the weight of the evidence, not its admissibility. Defendant's objections to Plaine's analysis of the PSG Appraisal are overruled.

### d. Tsachres Declarations

Defendant objects to the statements in the declaration of Transbay president Mike Tsachres to the effect that neither he nor his attorneys were "in possession, custody or control of the PSG Appraisal" after Transbay closed escrow in November 2008. *See* Tsachres Decl. ¶ 3. Defendant argues that the declaration is a sham and therefore can be discounted by the Court. Defendant also objects on relevance grounds to Tsachres's statement that he never read the PSG Appraisal.

A party cannot avoid summary judgment by submitting declarations that directly contradict his earlier version of the facts. *See Block v. City of Los Angeles*, 253 F.3d 410, 419 n. 2 (9th Cir. 2001). However, nothing in the Tsachres declaration contradicts Tsachres's deposition testimony.[3] Nor is there other evidence that it was manufactured to create a factual dispute where none otherwise would exist. In his deposition, Tsachres testified that he was given a copy of the PSG Appraisal, which he then turned over to another bank in order to obtain a loan. In his declaration, he stated that he did not have possession of the document after closing escrow—which occurred after he obtained the loan. Additionally, his statements regarding reading the PSG Appraisal is relevant to the factual determination of how much weight to give evidence that Tsachres used the PSG Appraisal to obtain a loan, which defendant argues is proof that the PSG Appraisal is accurate (or at least proof that the Plaine Appraisal is inaccurate). Defendant's objections are overruled.

---

[3] When Tsachres was asked during his deposition if he had ever seen the PSG Appraisal before, he said yes. Phelps Decl. Ex. B at 66:16–66:19 (filed under seal). He stated "they gave it to me, but this bank, when they reject it, they give me this package." *Id.* at 66:11–66:15 (filed under seal). Tsachres then went to other banks with "the package . . . with everything" in it. *Id.* at 59:10–59:12, 60:6–60:7. Tsachres also testified that the group that prepared the report asked him "for documents," and in particular for "a profit and loss statement." *Id.* at 67:3–67:9 (filed under seal).

11

### 2. The July Deloitte Appraisal

Plaintiff filed a declaration by Plaine, one of its experts, in opposition to this motion for summary judgment. In analyzing two appraisals prepared by Deloitte Financial Advisory Services LLP at the direction of defendant, Plaine states that:

> Neither appraisal discusses the city of San Francisco ordinance relating to service station properties, San Francisco Planning Code Section 228, et seq. (herein, the "conversion ordinance"). The conversion ordinance significantly affects the value of service station properties in San Francisco because it places restrictions on the ability to convert a service station property to another use, and the process to get a conversion approved (if at all) is costly and may take several years.

Plaine Decl. ¶ 23. Defendant objects to this evidence, stating that it is contradicted by statements in Plaine's initial report that "[t]he planning department indicates that obtaining a conversion permit is perhaps not as difficult as it was in previous years" and that "obtaining the appropriate demolition permit is reportedly not difficult." *See* Phelps Ex. X (at numbered page 8) (filed under seal)(explaining that a demolition permit and a conversion permit are the same thing). Plaintiff argues that Plaine's position with regard to the economic effect of the conversion ordinance has been consistent.

The Court does not find that Plaine's declaration is contradicted by his expert report. The declaration relates to his opinion of the conversion ordinance, while the expert report relates the planning department's opinion of the conversion ordinance. Defendant's objection is overruled.

### B. Genuine issues of material fact prevent summary judgement

As noted above, plaintiff's theory of the case is that the fair market value of the service station premises is $1,800,000, materially less than the $ 2,375,700 selling price offered by defendant Chevron, and that consequently Chevron violated the PMPA by failing to make a bona fide offer to sell to the franchisee. Chevron disputes plaintiff's claims.

Plaintiff presents evidence of the $1,800,000 fair market value in the form of the Plaine Appraisal. Through the Plaine Declaration and the Junius deposition, plaintiff presents evidence that the selling price was as much as $500,000 too high because it was based on the July Deloitte Appraisal, and the July Deloitte Appraisal failed to consider the impact of a provision of the San Francisco Planning Code concerning the conversion of service stations to other uses, even though the July Deloitte

12

Appraisal considered the highest and best use of the property to be as something other than a service center.[4] Plaintiff also presents evidence in the form of the Plaine Declaration that the three higher appraisals are inaccurate for other methodological reasons.

This is not a summary judgment motion where the parties have presented two numbers and the Court can simply conclude that, even assuming plaintiff's figure is the fair market value, defendant's offer still *approaches* the fair market value as a matter of law. Rather, there exists a genuine issue of material fact as to whether defendant has violated the bona fide offer provision of the PMPA.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is DENIED. (Doc. 40.)

**IT IS SO ORDERED.**

Dated: November 3, 2010

SUSAN ILLSTON
United States District Judge

---

[4] Defendant argues that because the PSG Appraisal figure was based on plaintiff continuing to use the property as a service station, and because the PSG Appraisal was higher that the sale price, the July Deloitte Appraisal's failure to consider the impact of the conversion ordinance is immaterial. Defendant's argument goes to the weight of the evidence only.
Defendant also argues that the constraint that plaintiff put on Plaine, requiring him to appraise the property for continued use as a service station rather than considering the highest and best use, means that the Court should discount the Plaine Appraisal. This argument too goes to the weight of the evidence.