IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA


TRANSBAY AUTO SERVICE, INC.,                No. C 09-04932 SI

        Plaintiff,

  v.

CHEVRON U.S.A. INC.,

        Defendant.

_____/


**INSTRUCTIONS TO JURY**

## DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case. A copy of these instructions will be sent with you to the jury room when you deliberate. You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:
1. the sworn testimony of any witness;
2. the exhibits which are received into evidence; and
3. any facts to which the lawyers have agreed.

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, [will say in their] closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not

evidence. You are to decide the case solely on the evidence received at the trial.

## EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.  When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case you must not consider the evidence that I told you to disregard.

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:
(1) the opportunity and ability of the witness to see or hear or know the things testified to;
(2) the witness' memory;
(3) the witness' manner while testifying;
(4) the witness' interest in the outcome of the case and any bias or prejudice; (5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

## EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves considering the witness's education and experience, the reasons given for the opinion and all the other evidence in the case.

## EXPERTS – QUESTIONS CONTAINING ASSUMED FACTS

The law allows expert witnesses to be asked questions that are based on assumed facts. These are sometimes called "hypothetical questions." In determining the weight to give to the expert's opinion that is based on the assumed facts, you should consider whether the assumed facts are true.

## CORPORATIONS AND PARTNERSHIPS-FAIR TREATMENT

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

## BURDEN OF PROOF- PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## STIPULATIONS OF FACT

The parties have agreed to certain facts, which are listed below. You should therefore treat these facts as having been proved.

1.      Beginning in the 1930s, Chevron owned the land and service station facility

located at 301 Claremont Boulevard, in the West Portal neighborhood of San Francisco and operated a Chevron-branded service station at that location. Over the years, Chevron leased that service station site to independent dealers who operated it as a Chevron-branded service station and paid rent to Chevron.

2.    Mike Tsachres is the President and sole owner of Transbay Auto Service, Inc.

3.    Mr. Tsachres has a Bachelor's Degree in Engineering from University of California – Berkeley and a Masters in Business Administration (MBA) from JFK University.

4.    In 2001, Plaintiff purchased the right to be the dealer at that location from Chevron's former lessee dealer.

5.    Plaintiff thereafter operated the service station under written Dealer Agreements with Chevron. The most recent Dealer Agreements between Plaintiff and Chevron were dated May 31, 2005, and had a three-year term that expired on August 31, 2008.

6.    In 2001, Mr. Tsachres was told by Chevron that the service station Transbay leased from Chevron was one of several locations in the Bay Area that Chevron planned to sell sometime in the near future.

7.    In a letter dated May 31, 2005, Chevron notified Plaintiff that it considered the service station "Non-Strategic." Chevron defined that term as follows:

"**Non-strategic Sites**: These are sites that ChevronTexaco currently anticipates will be sold within the next three years. This means that it is unlikely that the current lessee dealer agreements for this location will be renewed."

8.    Mr. Tsachres understood this statement meant that Chevron was considering selling the premises.

9.    At Chevron's May 2007 SNP meeting, the Transbay site was one of 22 San Francisco/Peninsula sites on the "SNP Action Item List, May 16, 2007 SNP Meeting." The proposed action plan for the Transbay site was "Market/abandon 2008…"

10.    On or about May 27, 2008, Plaintiff was provided a written Notice of Non-Renewal, as required by the PMPA. Plaintiff was advised in that letter that Chevron has decided to sell the premises, based on its determination that "it no longer makes sound business sense for Chevron to own the Premises and that resources invested in the Premises can be more profitably employed elsewhere." Plaintiff was also advised that Chevron would either offer to sell the premises to Plaintiff or that Plaintiff would be given the right to match any other offer Chevron accepted from a third party.

11.    The highest bidder in the bid process was Highland Development Company. While Chevron and Highland Development Company entered into a Letter of Intent regarding the purchase, that deal ultimately was not completed.

12.    In early July 2008, Chevron commissioned an appraisal of the premises by Deloitte Financial Advisory Services LLP ("Deloitte"), a real estate appraiser that Chevron routinely used to value service station properties.

13.    On or about July 23, 2008, Chevron received the Deloitte appraisal of the premises. Deloitte concluded that the fair market value of the premises was $2,386,000.

14.    On September 12, 2008, Chevron sent Plaintiff two proposed Purchase and Sales Agreements.

15.    Under one alternative, Plaintiff could purchase the premises and elect to stay branded as a Chevron station for a purchase price of $2,386,000. Under an alternative proposed Purchase and Sale Agreement, Plaintiff could buy the premises but not have any obligation to continue to operate the station under the Chevron brand.

16.    The purchase price under the "unbranded" alternative was $2,375,700.

17.    Because the parties needed more time to consummate the sale, on August 1, 2008,

Chevron agreed in writing to extend the expiration of the Dealer      Agreements to October 31, 2008.

18.     On or about October 16, 2008, Plaintiff accepted the "unbranded" offer under protest and reservation of his rights under the law.

19.     The sale of the premises from Chevron to Plaintiff closed on or about November 18, 2008.

20.     Following closing of the sale, Plaintiff re-opened the facility as a Valero-branded gas station.

21.     Plaintiff obtained financing in the amount of $1,781,775.00 from California Pacific Bank.

## NATURE OF CLAIM

This is an action under the Petroleum Marketing Practices Act ("Act"). The Act prohibits franchisors engaged in the sale, consignment, or distribution of motor fuel in commerce from terminating or non-renewing franchises without satisfying the Act's provisions. The purposes of the Act are to provide protection for franchisees from arbitrary or discriminatory termination of their franchises, and also to provide uniform rules for both franchisors and franchisees.

Plaintiff, Transbay Auto Service, Inc., claims that defendant, Chevron U.S.A. Inc., violated the Act by failing to make the plaintiff an offer for the sale of land, equipment and improvements owned by the defendant that was "bona fide." Defendant, Chevron U.S.A. Inc. claims that its actions were proper under the Act because its offer to the plaintiff was "bona fide".

## ESSENTIAL ELEMENTS OF PLAINTIFF'S CLAIM-GENERALLY

In this case, the parties have stipulated and it is undisputed that Plaintiff, Transbay Auto Service, Inc. had a motor fuel franchise with defendant, Chevron U.S.A. Inc. and that it leased the premises at which the motor fuel is sold from defendant, Chevron U.S.A. Inc.

The parties have also stipulated and it is undisputed that defendant, Chevron U.S.A. Inc., non-renewed plaintiff, Transbay Auto Service, Inc.'s, motor fuel franchise.

Defendant, Chevron U.S.A. Inc., has the burden of establishing by a preponderance of the evidence its affirmative defense that the non-renewal was permitted under the Petroleum Marketing Practices Act and that its non-renewal of the franchise was undertaken in compliance with the that Act.

Because the parties do not dispute the termination of the franchise, the burden of proof has shifted to the defendant, Chevron U.S.A. Inc. to prove its affirmative defense.

The Act provides certain conditions upon which termination of a franchise is permitted.

The condition for non-renewal that is at issue in this case is: Whether defendant, Chevron U.S.A. Inc.'s offer to sell its land, improvements and equipment to plaintiff was "bona fide," as further defined in these instructions.

## DETERMINING A "BONA FIDE OFFER"

Under the PMPA (the "Act"), whether Chevron U.S.A. Inc. made a bona fide offer the terms of the offer must be objectively reasonable. In the present case, to be objectively reasonable, the offer must "approach the fair market value" of the equipment and improvements being offered for sale, but need not be the actual fair market value of the property. A range of prices may reasonably "approach fair market value."

## FAIR MARKET VALUE

Whether a bona fide offer has been made is measured by an objective market standard. To be objectively reasonable, an offer must approach fair market value.

In general, the "fair market value" of the land, equipment and improvements at the subject service station should reflect what a willing purchaser would pay for that property. The offering price need not be the actual fair market value of the property. The fair market value is a flexible concept and a range of prices may have a reasonable claim to being (approaching) fair market value.

## DAMAGES - PROOF

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for the damage the evidence shows it has sustained and is reasonably certain to sustain in the future as a result of defendant's failure to renew plaintiff's franchise in violation of the Petroleum Marketing Practices Act. You should consider the following:

--The difference between the purchase price that plaintiff paid for defendant's property and the fair market value of that property;

--The difference in interest that plaintiff has and will pay over the life of the loan that it obtained to purchase the property from defendant, compared to the total interest that plaintiff would have paid over the life of the loan had it purchased the property for its fair market value;

--The difference between the loan fee that defendant paid in connection with obtaining the loan to purchase the property from defendant compared to the loan fee that plaintiff would have paid had it purchased the property for its fair market value.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

## LIABILITY OF CORPORATIONS- SCOPE OF AUTHORITY NOT IN ISSUE

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors and officers performed within the scope of authority.

## ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES

The arguments of the attorney are not evidence of damage. Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

## JURY NOT TO TAKE CUE FROM JUDGE

I have not intended by anything I have said or done, or by any questions that I have asked, to suggest how you should decide any questions of fact or that I believe or disbelieve any witness. If anything I have done or said has seemed so to indicate, you must disregard it and form your own opinion.

## ALL INSTRUCTIONS NOT NECESSARILY APPLICABLE

The purpose of the court's instructions is to instruct you as to the applicable law so that you may arrive at a just and lawful verdict. Whether some instructions apply will depend upon what you find to be the facts. Even though I have instructed you on various subjects, including damages, you must not treat the instructions as indicating the court's opinion on how you should decide any issue in this case or as to which party is entitled to your verdict.

## DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## TAKING NOTES

Some of you have taken notes to help you remember the evidence.  Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.

If you send out a question, I will consult with the parties before answering  it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone-including me-how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

## RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached  unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.