IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANSBAY AUTO SERVICE, INC., | No. C 09-04932 SI |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL** |
| v. | |
| CHEVRON U.S.A., INC., | |
| Defendant. | |

Currently before the Court is the renewed motion by defendant Chevron U.S.A., Inc. ("Chevron") for judgment as a matter of law ("JMOL") or, in the alternative, for new trial. Plaintiff Transbay Auto Service, Inc. ("Transbay") has filed an opposition, to which Chevron has replied. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the February 8, 2013 hearing. Having considered the parties' arguments, the Court hereby DENIES defendant's motion for JMOL and DENIES defendant's motion for new trial, for the reasons set forth below.

**BACKGROUND**

On October 16, 2009, Transbay sued Chevron, alleging a violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801, et seq. *See* Amended Compl. ¶ 17. The complaint alleged that Chevron failed to provide Transbay a "bona fide" offer to buy the service station property in question from Chevron at a price that approached fair market value. *Id.* At the heart of the parties' dispute is the impact of a San Francisco conversion Ordinance on the fair market value of the property. Chevron contends that the Ordinance presents no major barrier to redeveloping the property to its

"highest and best use," which is as something other than a service station. Because the Ordinance presents no barriers to redevelopment, Chevron argues that it does not lower the fair market value. Transbay contends that the Ordinance does present significant barriers to redevelopment, and thus, lowers its fair market value. Therefore, an offer that does not consider the Ordinance's burden on the property, Transbay contends, is not a bona fide offer.

At trial, the jury was presented with evidence that in September 2008, Chevron offered to sell Transbay its interests in the service station property, including the real property, improvements, fixtures, underground storage tanks and lines, and personal property for $2,375,700, without the right to use the Chevron brand, or for $2,386,000 with the right to use the Chevron brand. *See* Def.'s Trial Ex. 104. Transbay elected to purchase the service station, under protest, without the branding right. *See* Def.'s Trial Ex. 105.

Transbay provided the jury with testimony from two expert witnesses, Mr. Plaine and Mr. Junius. Mr. Plaine, a certified general appraiser, testified that the value of the service station property, as a service station, was $1,800,000 ("Plaine Appraisal"). Phelps Decl. in Supp. Def.'s Mtn. Judgment as a Matter of Law (Dkt. 149) ¶ 2, Ex. B. Mr. Junius, a land use attorney, testified as to the effect of the regulatory process imposed in part by the Ordinance on the potential closure and redevelopment of the existing service station property. Phelps Decl. ¶ 2, Ex. A.

Chevron provided the jury with an appraisal prepared by Deloitte Financial Advisory Services LLP, which valued the service station property at $2,386,000 ("July Deloitte Appraisal"). Phelps Decl. ¶ 2, Ex. C; Def.'s Trial Ex. 114. The July Deloitte Appraisal was the basis for Chevron's September 2008 offer. *See* Def.'s Mtn. JMOL and Alternative Mtn. New Trial ("Dkt. 148 "), at 9; Def's Trial Ex. 114. In performing the appraisal, and making the offer to Transbay based on that appraisal, Chevron assumed that the Ordinance presented no significant barrier to converting the property to an alternate "highest and best use." *See Id.*

At trial, Chevron also sought to admit evidence of an appraisal prepared on behalf of America California Bank, and done by the Property Science Group ("PSG"). *See* Phelps Decl. ¶ 2, Ex. D; *see also* Def.'s Trial Ex. 106. After holding an evidentiary hearing outside the presence of the jury, the Court held that the PSG Appraisal constituted inadmissible hearsay. Tsachres Trial Transcript (Dkt.

142), at 15.

Before the jury returned its verdict, both parties filed motions for JMOL under Federal Rule of Civil Procedure 50(a). Mem. P. & A. in Supp. Def.'s Mtn. JMOL and Alternative Mtn. New Trial ("Dkt. 148 "), at 3. The Court denied both motions. *Id.* The jury determined that Chevron did not make a bona fide offer that approached fair market value, and awarded Transbay $495,000—an amount which approximates the difference in value between the purchase price and the Plaine Appraisal. *See* Jury Verdict (Dkt. 131), at 1-2.

Chevron now brings a renewed motion for JMOL under Federal Rule of Civil Procedure 50(b),[1] or in the alternative, a motion for new trial under Rule 59. Chevron bases its renewed motion for JMOL on two grounds: (1) without Transbay's expert witnesses' incorrect assumption that the Ordinance prohibits conversion of the service station to any other use, Transbay provided the jury with no evidence to suggest that Chevron's offer was not bona fide; and (2) Transbay provided the jury with no evidence to suggest that the Ordinance had any appreciable economic effect on the value of the property.

Chevron bases its motion for a new trial on two grounds: (1) that the Court erred in admitting the evidence and testimony from Transbay's two expert witnesses, Mr. Plaine and Mr. Junius; and (2) that the Court erred in excluding the PSG Appraisal.

**LEGAL STANDARD**

**A.     Renewed Motion for Judgment as a Matter of Law: Rule 50(b)**

Rule 50(b) of the Federal Rules of Civil Procedure allows a party to renew a motion for JMOL after an adverse jury verdict, if the moving party previously made a motion for JMOL at the close of all the evidence at trial. *See Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 183 n. 9 (9th Cir. 1989). In reviewing a motion for JMOL, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). The party moving for JMOL bears a heavy burden. "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the

---

[1] Although Chevron cites to Federal Rule of Civil Procedure 50(a) in support of its renewed motion for judgment as a matter of law, the correct citation is to Rule 50(b).

3

jury's verdict." *Id.* The question is whether there is substantial evidence to support the jury finding for the non-moving party. *See Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). In ruling on such a motion, the trial court may not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists to support the verdict. *See Mosesian v. Peat, Marwick, Mitchell Co.*, 727 F.2d 873, 877 (9th Cir. 1984). Substantial evidence is more than a "mere scintilla." *See Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Chisholm Bris. Farm Equip Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974). Rather, it is defined as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

### B. Motion for New Trial: Rule 59

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Rule 59 gives the trial judge the power to prevent a miscarriage of justice. *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246 (9th Cir. 1957). A new trial may be ordered to correct manifest errors of law or fact, but the burden of showing harmful error rests on the party seeking the new trial. *Malhiot v. Southern Cal. Retail Clerks Union*, 735 F.2d 1133 (9th Cir. 1984). A motion for new trial may invoke the court's discretion insofar as it is based on claims that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward Co. v. Duncan*, 311 U.S. 243, 251 (1940). Where a movant claims that a verdict is against the clear weight of the evidence, a new trial should be granted where, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed" by the jury. *Landes Const. Co.*, 833 F.2d at 1371-72.

The authority to grant a new trial under Rule 59 "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980) (per

4

1 curiam); *see Vickery v. Fisher Governor Co.*, 417 F.2d 466, 470 (9th Cir. 1969) (trial court has "wide judicial discretion" in considering new trial motion).

**DISCUSSION**

**I.     Renewed Motion for JMOL**

The PMPA requires in part that a franchisor which has elected to terminate or non-renew for business reasons must make a "bona fide offer to sell, transfer or assign" its interest in the premises to the franchisee. 15 U.S.C. § 2802(b)(3)(D). The only issue for which the jury returned a verdict in this case, and for which Chevron now seeks JMOL, was whether Chevron's September 2008 offer to sell the service station property to Transbay constituted a "bona fide" offer under the PMPA. A bona fide offer under the PMPA is measured by an objective market standard. "To be objectively reasonable, an offer must approach[] fair market value." *Ellis v. Mobil Oil*, 969 F.2d 784, 787 (9th Cir. 1992) (alteration in original) (internal quotation marks omitted). "The value of that offer should reflect what a willing purchaser would pay for the fee title of the land, the improvements and the equipment of a terminated franchise." *Id.* Chevron has failed to meet its heavy burden of establishing that the evidence introduced at trial permitted only one reasonable conclusion, that Chevron's offer was bona fide, and that the jury's verdict was contrary to that conclusion.

First, Chevron contends that Transbay's experts relied on a false hypothetical assumption that the service station could not be converted to another use. Chevron argues that the "highest and best use" of the service station property was for something other than a service station and its July Deloitte Appraisal valuing the property at $2,386,000 assumed as much. According to Chevron, although Transbay's experts agreed that the property's highest and best use was not as a service station, Transbay's experts disregarded the highest and best use assumption in favor of an alternate assumption, that the property could not be converted to another use. And it is on the basis of that alternate hypothetical assumption that Transbay's experts appraised the property only as a service station. *See* Phelps Decl., ¶ 2, Ex. B. In fact, Chevron notes that Transbay's experts testified that the non-conversion assumption did not comport with the reality that the property *could* be converted to something other than a service station. Therefore, Chevron would have the Court conclude that because the highest and best

5

use of the property was for something other than a service station, and because Transbay provided the jury with no evidence as to the value of the property when used for another purpose, the jury had no legally sufficient basis from which to find that Chevron did not make a bona fide offer. The Court disagrees.

Although Transbay did not present evidence of the value of the property as something other than a service station, Transbay did present evidence as to the impediments to achieving that alternative use and how those impediments impacted fair-market value. Rather than assume the Ordinance raised no barriers to conversion, as Chevron did, Transbay's experts assumed the Ordinance did raise barriers to conversion, and valued the property accordingly. Transbay's land use attorney expert, Mr. Junius, testified that based upon his substantial experience, securing the necessary permit required by the Ordinance could take two to three years and cost more than $500,000. Decl. Phelps ¶ 2, Ex. A at 6; Junius Trial Transcript (Dkt. 141), at 14-16. Transbay's expert appraiser, Mr. Plaine, testified that his experience suggested an even longer period than that opined by Mr. Junius. Plaine Trial Transcript (Dkt. 143), at 34. Mr. Junius also testified that regardless of whether a redevelopment proposal gets approved, the delay in obtaining that approval creates risk for the developers and can have an effect on the value of the property due to fluctuating market conditions. Junius Trial Tr. at 17-19. From this evidence, a reasonable jury could conclude that the Ordinance lowered the fair market value by burdening any potential redevelopment efforts. Thus, the jury could have found that Chevron's offer, which excluded consideration of the impediments to achieving the costly alternate use, was not bona fide.

Second, Chevron argues that JMOL is appropriate because the crux of Transbay's overcharge claim assumes that the Ordinance depressed the value of the service station property, but Transbay failed to demonstrate the actual economic effect on the value of the property. By failing to demonstrate the actual economic effect, Chevron contends that there was no evidence from which the jury could have concluded that Chevron's offer was too high. In support, Chevron cites Mr. Junius' testimony that he had not attempted to estimate the extent to which the Ordinance reduced the value of the property, and even if he had, that it would likely be "impossible to calculate." Dkt. 148, at 7 (citing Junius Trial Tr., at 26). The Court disagrees with this characterization of Mr. Junius' testimony. Mr. Junius in fact

6

testified that the economic effect of the Ordinance would be difficult to calculate because the Ordinance is just one part of the larger Planning Code that must be satisfied before any redevelopment project can be approved. Junius Trial Tr., at 26-27. Therefore, rather than suggest that the Ordinance had no appreciable economic effect on the market value of the property, Mr. Junius actually testified that its impact was broad.

Even assuming that there was no evidence of the precise dollar value of the Ordinance on the value of the property, the jury did hear testimony regarding the burden more generally of the redevelopment process required by the Ordinance discussed above. Moreover, Transbay provided the jury with evidence of Chevron's extensive efforts to market the service station property. In December 2007, Chevron circulated marketing materials in order to solicit bids to purchase the property. Pl.'s Trial Ex. 18. Chevron received three offers: $2.5 million from Highland Development; $1.45 million from Transbay; and $1.2 million from Farrell Real Estate Investments. Pl.'s Trial Ex. 19. The Highland offer, which was well above the other two offers, required that Chevron secure a permit to close and redevelop the station, pursuant to the Ordinance or any other local law. Pl.'s Trial Ex. 20 at 3. In other words, the Highland offer required that Chevron would bear that cost of complying with the Ordinance prior to sale. The other two significantly lower offers assumed the property would continue to be used as a service station. Although Chevron accepted Highland's offer, Highland withdrew the offer during the review period and no evidence was presented as to why Highland withdraw the offer. Transbay also provided the jury with evidence of the value of the property as a service station at prices ranging from $1,500,000 by Chevron's expert appraiser, Mr. LeFevers, and $1,800,000 by Mr. Plaine.

The various offers and appraisals reflect "[t]he value of that offer should reflect what a willing purchaser" assuming both conversion and non-conversion. *See Ellis*, 969 F.2d at 787. And from these offers and appraisals, a reasonable jury could have concluded that any fair market value should account for the Ordinance and the associated difficulty with closing and redeveloping the property – which Chevron's September 2008 offer failed to account for. Chevron's argument that the PMPA does not require a bona fide offer to consider redevelopment costs similarly misses the mark. *See* Dkt. 148 at 8. To resolve the dispute here – the effect on the market value of an ordinance precluding the closing and redevelopment of the service station without government approval – the jury received considerable

7

evidence as to objective market standards, and the jury reasonably relied on that evidence to resolve the Ordinance dispute in favor of Transbay.

In light of the heavy burden imposed on the moving party by Rule 50 to set aside a jury verdict, the Court concludes that a reasonable jury would have a legally sufficient basis to find that Chevron's September 2008 offer – which excluded consideration of the burdens of conversion – to Transbay did not approach fair market value, and was therefore not bona fide as required by the PMPA.

### III. Motion for New Trial

Chevron presents two grounds to support its motion for a new trial under Rule 59: (1) Chevron contends that the testimony from Transbay's experts, Mr. Plaine and Mr. Junius, should have been excluded as unreliable under *Daubert*; and (2) Chevron contends that the PSG Appraisal should have been admitted into evidence as an adoptive admission. The Court addresses each contention in turn.

#### A. Testimony from Transbay's Experts

For the third time in this case, Chevron argues that the testimony and evidence presented by Transbay's experts should have been excluded from evidence. In its summary judgment order, the Court held that the constraint Transbay put on its experts, requiring them to appraise the service station property for continued use as a service station rather than considering the highest and best use, goes to the weight, not the admissibility, of the evidence. Order Den. Def.'s Mtn. Summ. J. (Dkt. 63), at 13. Before trial, Chevron moved *in limine* to exclude the testimony of Transbay's experts. Def.'s Mtn. in Limine No. 4. (Dkt. 68). The Court denied the motion, again holding that Chevron's objection to the experts' testimony went to its weight, not its admissibility. Final Pretrial Scheduling Order (Dkt. 95), at 3. Chevron has again raised the same concerns. In particular, Chevron argues that the expert testimony, and the accompanying reports, were based on a unrealistic limitation imposed by Transbay's counsel for purposes of litigation that made the expert opinions unreliable in contravention of *Daubert*

principles. The Court once again rejects this argument.[2]

Federal Rule of Evidence 702 provides that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony under Rule 702 must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Rule 702 also requires that there be a valid connection to the pertinent inquiry as a precondition to admissibility. *Id.* at 592. It is within the sound discretion of the trial judge to determine whether a qualified expert's testimony (1) is based upon sufficient facts or data, (2) is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589.

To satisfy Rule 702 and *Daubert*, any scope limitations, or any limitations for that matter, must be disclosed in their appraisals. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589. Transbay's experts sufficiently explained their methodology and fully disclosed the fact that their appraisals were made under a hypothetical condition that the highest and best use of the subject property be disregarded and the subject property be valued as a service station facility. Phelps Decl. ¶ 2, Ex. B. Neither of Transbay's experts testified that the property could not be redeveloped for another use, and their reports state no such conclusion. Therefore, the Court finds that this evidence was properly admitted at trial; Chevron's objections to the evidence presented by Transbay's experts go to the weight, not the admissibility of the evidence.[3]

### B. The PSG Appraisal

Chevron argues that the PSG Appraisal, which Mr. Tsachres used to obtain financing to purchase the service station property, constitutes an adoptive admission under Federal Rule of Evidence

---

[2] Because the Court finds the Transbay's expert testimony properly admissible, the Court need not address Transbay's waiver argument. *See* Pl.'s Mem. P. & A. in Opp'n. Def.'s Mtn. for JMOL and Alternative Mtn. New Trial, (Dkt. 151), at 5.

[3] Chevron raises no explicit objection to Mr. Junius' qualifications as an expert. Nonetheless, the Court affirmatively finds that any objections to Mr. Junius' testimony as an expert witness go similarly to the weight, not the admissibility, of the evidence.

9

801(d)(2)(B), and therefore should have been admitted into evidence. An adoptive admission is "a statement of which the party has manifested an adoption or belief in its truth," and it can be offered against the party making the admission. Fed. R. Evid. 801(d)(2)(B). "Before letting into evidence as an adoptive admission, 'the district court must first find that sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant did actually hear, understand and accede to the statement." *United States v. Orellana-Blanco*, 294 F.3d 1143, 1148 n. 10 (9th Cir. 2002).

The Court initially held in its summary judgment order, prior to an evidentiary hearing, that based on the record at the time there was enough evidence – "albeit disputed" – for a jury reasonably to conclude that Transbay had adopted the statement in the PSG Appraisal, and that it was therefore admissible as an adoptive admission. Order Den. Def.'s Mtn. Summ. J., at 9. After holding an evidentiary hearing on September 10, 2012, however, in which Mr. Tsachres testified regarding the circumstances of obtaining the financing loan, the Court ruled the PSG Appraisal inadmissible. Tsachres Trial Tr., at 15. In so ruling, the Court noted that neither the deposition transcript, nor any other evidence, indicated that Mr. Tsachres actually read the contents of the PSG Appraisal. *Id.* at 11 ("[T]he only evidence is that he didn't read these materials. The only evidence. There's no contrary evidence."). As such, the Court held that no reasonable jury could conclude that the defendant did actually hear, understand and accede to the PSG Appraisal, and that therefore the PSG Appraisal was not admissible as an adoptive admission. Chevron argues that Mr. Tsachres' mere possession of the PSG Appraisal is sufficient to constitute an adoptive admission. But the Ninth Circuit requires that an individual "actually hear, understand and accede to the statement" for it to constitute an adoptive admission. *Orellana-Blanco*, 294 F.3d at 1148 n. 10; *see also United States v. Ospina*, 739 F.2d 448, 451 (9th Cir. 1984) (finding an adoptive admission not by mere possession but rather only after a person acted on written instructions). Seeing no new information indicating that the Court erred, the Court declines to reverse its position and finds that the PSG Appraisal was properly excluded as inadmissible hearsay.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Chevron's motion for judgment as a matter of law, and DENIES Chevron's motion for new trial.

**IT IS SO ORDERED.**

Dated: February 7, 2013

SUSAN ILLSTON
United States District Judge