IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANSBAY AUTO SERVICE, INC., | No. C 09-04932 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, EXEMPLARY DAMAGES, AND PRE-JUDGMENT INTEREST** |
| v. | |
| CHEVRON U.S.A., INC., | |
| Defendant. | |

Now before the Court is plaintiff Transbay Auto Service, Inc.'s motion for an award of reasonable attorneys' fees and expert fees and costs, an award of exemplary damages, and a determination of an increased pre-judgment interest rate. Defendant Chevron U.S.A., Inc. has filed an opposition to which Transbay has replied. On February 7, 2013, the Court directed Transbay to file supplemental briefing detailing how it arrived at the amount of attorneys' fees requested in this case. Transbay filed its supplemental briefing and Chevron filed a reply. On March 1, 2013, the Court held a hearing on the motion. Having considered the parties' arguments, and for the reasons set forth below, Transbay's motion for: (1) an award of reasonable attorneys' fees and expert fees and costs is GRANTED IN PART; (2) an award of exemplary damages is DENIED; and (3) an increase in the pre-judgment interest rate is DENIED.

**BACKGROUND**

It has been nearly six years since the transaction giving rise to this case occurred. Chevron offered to sell Transbay its interest in a service station property for $2,375,000, in September 2008. Transbay accepted under protest after determining that the price should have been closer to $1,800,000. *See* Def.'s Trial Exs. 104-05.

In October 2009, Transbay sued Chevron, alleging a violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801, *et seq. See* Amended Compl. ("complaint") ¶ 17. The complaint alleged that Chevron failed to provide Transbay a "bona fide" offer to sell the service station in question at a price that approached fair market value. *Id.* The parties engaged in discovery and attempted to resolve the dispute, without success, through mediation. On November 3, 2010, the Court denied Chevron's motion for summary judgment. Moreover, the parties engaged in contentious evidentiary disputes through numerous motions in limine.

The parties first went to trial in June 2011, but the proceeding ended in a mistrial after Chevron's counsel became ill and unable to continue. *See* Dkt. 104 (mistrial granted on June 22, 2011). The parties went to trial again approximately one year later in September 2012. At the conclusion of trial, the jury determined that Chevron had not made a bona fide offer to sell the service station property, thus violating the PMPA, and awarded Transbay $495,000.

Transbay now brings this motion, seeking (1) an award of reasonable attorneys' fees, expert fees, and costs; (2) an award of exemplary damages based on Chevron's wilful disregard of the requirements of the PMPA; and (3) a determination of an increased pre-judgment interest rate based on substantial equities. Chevron objects, arguing principally that the attorneys' fees motion is insufficiently detailed, and that the award of exemplary damages and adjustment of the prejudgment interest rate contradict established case law on those subjects.

# DISCUSSION

## I.    Plaintiff's Motion for Attorneys' Fees, Expert Fees and Costs, and Damages

Transbay seeks $244,594.25 in attorneys' fees, as well as $37,683.11 in expert fees and costs pursuant to 15 U.S.C. § 2805(d).[1]

### A.    Entitlement to Fees

Section 2805(d) of the PMPA provides that a prevailing franchisee shall be entitled to "reasonable attorney and expert witness fees to be paid by the franchisor." 15 U.S.C. § 2805(d)(1)(C). "The purpose of attorneys' fees is to deter franchisors from improperly contesting meritorious claims." *Graham Oil Co. v. ARCO Products, Co.*, 43 F.3d 1244, 1248 (9th Cir. 1994). Here, there is no dispute that Transbay is the prevailing franchisee as envisioned by the PMPA.

### B.    Lodestar Calculation

Having determined that Transbay is a prevailing party, the Court must next determine what fees are reasonable. A district court begins its calculation of fees by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 436 (1983). The resulting number is frequently called the "lodestar" amount. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours "that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested. *Id.* at 433.

#### 1.    Hourly Rates

A critical inquiry in determining reasonable attorneys' and expert fees is the reasonable hourly rate. *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). "The fee applicant has the

---

[1] In its motion, Transbay variously requested $201,977, $207,227, and $213,477 in fees, and a multiplier that would increase fees to $425,000. In its supplemental briefing, Transbay clarified that it now seeks $244,594.25, and a multiplier or weighted rate to increase fees to $425,000.

3

1  burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested
2  rates are in line with those prevailing in the community for similar services of lawyers of reasonably
3  comparable skill and reputation." *Id*. at 1263.  In establishing the reasonable hourly rate, the court may
4  take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of
5  counsel; (3) the quality of representation; and (4) the results obtained. *See Cabrales v. County of Los*
6  *Angeles*, 864 F.2d 1454, 1464 (9th Cir.1988).  Other factors that can be considered are (1) the time and
7  labor required; (2) the preclusion of employment by the attorney due to acceptance of the case; (3) time
8  limitations imposed by the client or circumstances; (4) the amount involved and the results obtained;
9  (5) the "undesirability" of the case; and (6) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3.
10 These factors are subsumed in the initial lodestar calculation, and should not serve as independent bases
11 for adjusting fee awards. *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).

12 Transbay's documentation shows that eight Bleau Fox timekeepers worked on this matter at the
13 following rates: (1) Martin Fox, $350 per hour, (2) Thomas Bleau, $350 per hour, (3) Samuel T. Rees,
14 $350 per hour, (4) Gennady L. Lebedev, $350 per hour,[2] (5) Melissa Rhee, $350 per hour, (6) Megan
15 Childress $250 per hour, (7) Jacquelynn Remery, $75 per hour (8) Robert Arias, $75 per hour.  Bleau
16 Fox's practice at the time this case began was to bill senior attorneys at $350 per hour and junior
17 attorneys at $250 per hour.  Ms. Remery was a paid law clerk who worked for Bleau Fox while
18 attending law school. Fox Decl. II. ¶ 6. Mr. Arias is a paralegal at Bleau Fox. *Id*. ¶ 7.

19 Chevron objects to these hourly rates on the basis that Transbay has failed, both under Civil
20 Local Rule 54-5(b)(3) and pursuant to *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), to sufficiently
21 detail the qualifications of several timekeepers, or provide evidence or affidavits suggesting that the
22 requested rates are in line with those qualifications.  Civil Local Rule 54-5(b)(3) requires the party
23 seeking a fee award to submit "[a] brief description of relevant qualifications and experience and a
24 statement of the customary hourly charges of each such person or of comparable prevailing hourly rates
25 or other indication of value of the services." Civ. L. Rule 54-5(b)(3).  Similarly, in *Blum v. Stenson*, the
26 U.S. Supreme Court stated, "[t]o inform and assist the court in the exercise of its discretion, the burden
27
28   [2] The records reflect that Bleau Fox billed Mr. Lebedev out at $250 per hour on some occasions, and $350 per hour on other occasions.

4

1 is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – 2 that the requested rates are in line with those prevailing in the community for similar services by lawyers 3 of reasonably comparable skill, experience and reputation." 465 U.S. at 895 n. 11.

4 The Court concludes that Transbay has demonstrated that the attorney and paralegal rates 5 charged in this case are reasonable. *See* Fox Supp. Decl. I (Dkt. 150-1), at 2-4. Each of the attorneys 6 has considerable experience litigating similar types of cases to the one here, and Transbay has provided 7 the Court with satisfactory evidence to show that the rates charged are in line with, if not lower than, 8 the overall market rate for attorneys with litigation experience in this area of law. *Id.*; *see also* Foreman 9 Decl. (Dkt. 157), ¶¶ 2-4. Similarly, the paralegal rate is reasonable given Mr. Arias' experience and the 10 types of tasks he performed in this case. *See* Fox Supp. Decl. I. ¶ 7. Transbay submits the declaration 11 of Ronald Foreman, a partner in the San Francisco law firm of Foreman & Brasso, who states that he 12 has "previously and recently litigated . . . PMPA cases in Federal Court" and has done similar work as 13 the type of work done in this case. *Id.* He further states that the standard rates for PMPA cases are $500 14 per hour. *Id.* Transbay also submitted evidence that rates ranging from $325 per hour for associates 15 to $700 per hour for partners were reasonable for a case involving the sale and reconstruction of gas 16 stations in the Central District of California Los Angeles market.[3]

17

18 **2.    Reasonableness of the Hours**

19 It is Transbay's burden to "document the appropriate hours expended in the litigation by 20 submitting evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th 21 Cir. 1992). The appropriate number of hours include all time "reasonably expended in pursuit of the 22 ultimate result achieved, in the same manner that an attorney traditionally is compensated by a fee-23 paying client for all time reasonably expended on the matter." *Hensley*, 461 U.S. at 431. Fee applicants,

---

[3] The Court rejects defendants' assertion that it is error for the Court to consider base hourly rates on cases decided outside of the forum district. While it is true that, "[g]enerally, when considering a reasonable hourly rate, the relevant community is the forum in which the district court sits," *see Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008), the Court finds that, in light of the totality of the evidence presented as to the market rate for attorneys' fees, there is no material distinction between the San Francisco and Los Angeles markets such that attorneys' fees deemed reasonable in Los Angeles would be unreasonable in San Francisco for the type of matter at issue in this case.

1 and the Court, should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id.* at
2 434.

3 The party opposing the fee application "has the burden of rebuttal that requires submission of
4 evidence to the district court challenging the accuracy and reasonableness of the hours charged or the
5 facts asserted by the prevailing party in its submitted affidavits." *Gates v. Rowland*, 39 F.3d 1439, 1449
6 (9th Cir. 1994). "Conclusory and unsubstantiated objections are not sufficient to warrant a reduction
7 in fees." *Lucas v. White*, 63 F. Supp. 2d 1046, 1057-58 (N.D. Cal. 1999).

### a.     "Incomprehensible" Time Entries

10 Chevron contends that the total fee award should be reduced by $7,905, amounting to 28.38
11 hours of work, because several of Transbay's time entries consist of non-descriptive shorthand
12 abbreviations or are otherwise incomprehensible and provide no basis for determining that the time was
13 reasonably spent. Specifically, Chevron objects to (1) the abbreviations of the attorneys' names in the
14 time entries, and (2) the vague and incomprehensible descriptions of the tasks described in numerous
15 entries.

16 The Court has reviewed Transbay's billing statements, and particularly those entries identified
17 by Chevron as being deficient, and concludes that (1) Transbay has sufficiently linked the attorney
18 abbreviations with the individual attorneys to have worked on the matter, and (2) Transbay has
19 insufficiently described one time entry to justify reimbursement for that time spent.

20 In his first supplemental declaration, Transbay's counsel Martin Fox identifies each attorney who
21 worked on this case with his or her corresponding attorney abbreviation in the billing statement. *See*
22 Fox Supp. Decl. I. ¶¶ 2-7. For example, the declaration makes clear that "MJR" refers to associate
23 Melissa Rhee, and "GL" (or "GLL") refers to senior attorney Gennady Lebedev. *See*, *e.g.*, Fox Decl.,
24 Ex. A; Phelps. Decl., Ex. G. Therefore, the Court finds that the attorney abbreviations describe with

6

sufficient explanation who worked on what aspects of the case such that the Court can determine whether the time was reasonably spent.[4]

The Court, however, agrees with Chevron that Transbay has one time entry that is too vague and too brief to permit the Court to assess the reasonableness of the hours claimed. Among the fifteen time entries Chevron contends are too imprecise, the Court agrees that the entry merely listing "Research," without providing a description of the substance of the work done, the issues that were researched, is insufficient. *See* Def.'s Supp. Br. (Dkt. 162), at 3-4. Unlike the other fourteen questioned entries, this entry provides no context for the Court to determine whether that which was researched was reasonable.[5] In contrast, other entries provide marginally more explanation, such as "Research, [speak with] MC," and "Trial Prep, PTCS (Pre-Trial Conf. Stmt), etc." *See*, *e.g.*, Fox Decl., Ex. A; Phelps. Decl., Ex. G.

The Ninth Circuit has stated that when faced with deficient and vague billing records, a district court may be justified in denying fees altogether. *See Norris v. Sysco Corp.*, 191 F.3d 1043, 1052 (9th Cir. 1992) ("The deficient presentation by Norris might well have justified the district court in throwing up its hands and refusing to award any fees whatsoever."). However, it is generally recognized that "deficiencies in documentation are cause for reduction rather than outright denial of fees," *Action on Smoking and Health v. C.A.B.*, 724 F.2d 211, 220 (D.C. Cir. 1984).

The Court finds that Megan Childress' ("MC")[6] December 7, 2010 time entry, described merely as "Research," for which she billed .33 hours at a rate of $250 per hour for a total fee of $82.50, is insufficiently detailed to allow the Court to assess the reasonableness of the time billed. *See* Fox Decl.,

---

[4] Chevron's contention that the attorney abbreviations are insufficient to determine which attorney charged what amount is either disingenuous or reflects inattention. In Martin Fox's declaration in support of Transbay's motion for mistrial sanctions (Dkt. 101), prepared and filed in 2011, Fox identified in no uncertain terms which shorthand attorney abbreviations referred to which attorney on the case.

[5] The Court rejects Chevron's argument that other shorthand in the billing statement, such as "fu" or "s/w," are inadequately explained to warrant exclusion from the total sum of attorneys' fees that Chevron owes. In his first supplemental declaration, Martin Fox explained the meaning of these shorthand abbreviations, and accordingly the Court has been provided a basis for determining whether those entries were reasonable. Fox Decl. I, ¶ 10.

[6] The Court notes that Chevron erroneously attributes this time entry to Mr. Lebedev ("GLL"), *see* Phelps Decl., Ex. G, not Ms. Childress.

7

Ex. A, Dkt. 138-2 at 23. Accordingly, the Court exercises its discretion to reduce the amount of fees owed by $82.50.

### b. Pre-litigation activities

Chevron contends that it should not be responsible for $5,057.50 in fees related to Transbay's pre-litigation activities that arose more than a year before Transbay filed its original complaint in October 2009. *See* Fox Decl., Ex. A, Dkt. 138-2 at 2-7. The Court disagrees.

Under *Hensley v. Eckerhart*, a prevailing attorney is entitled to compensation for time "reasonably expended *on the litigation*." *Webb v. Board of Educ. of Dyer County*, 471 U.S. 234, 242 (1985) (emphasis in original). Time is reasonably expended on the litigation when it is "useful and of the type ordinarily necessary to secure the final result obtained from the litigation." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (internal citations and quotations omitted). When determining the types of activities ordinarily necessary to secure the final results obtained, courts look to, in part, whether the activity was "a necessary pre-cursor to the filing of a lawsuit" and, if so, courts have awarded attorneys' fees for such work. *See Sierra Club v. U.S. E.P.A.*, 625 F. Supp. 2d 863, 870 (N.D. Cal. 2007); *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993) (allowing fees for some pre-litigation work, but disallowing fees for hours expended lobbying state legislatures as not 'reasonably expended on the litigation.") (internal quotations omitted).

The Ninth Circuit, in the context of an action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, wherein the statute allows the court in its discretion to "award reasonable attorneys' fees and costs of action to either party," has noted that fees for "work done on the lawsuit prior to the filing of the lawsuit are recoverable." *Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974, 987 & n. 51 (9th Cir. 2001).

Here, Chevron offered to sell Transbay the service station property in September 2008. Soon thereafter, Transbay accepted the offer under protest, and in 2009, Transbay sued Chevron for failing to comply with the PMPA's "bona fide" offer requirement. Between the time Transbay accepted the offer and the time it filed this lawsuit, it is reasonable for Transbay to consult with counsel to investigate the facts and the law prior to initiating any action against Chevron.

After reviewing the time entries dated prior to the commencement of the lawsuit in 2009, and specifically those which Chevron has identified as objectionable (see Phelps Decl. ¶ 4, Ex. H), the Court finds that there is nothing to suggest that Transbay billed for anything other than that which was "a necessary pre-cursor to the filing of a lawsuit." *See Webb*, 471 U.S. at 244. The majority of the pre-litigation fees relate to time spent making telephone calls to various individuals relevant to this matter, including Mike Tsachres, president of Transbay. Other questioned time entries include an hour spent "Review[ing] Environmental Report," which was likely related to an aspect of Transbay's investigation into the propriety of Chevron's offer price. *See* Fox Decl., Ex. A, Dkt. 138-2 at 3. Accordingly, the Court declines to reduce the amount of pre-litigation fees Chevron owes Transbay.

### c. "Over-billing"

Chevron contends that Transbay's billing statements contain seven entries that amount to "obvious over billing," Def.'s Opp'n (Dkt. 145), at 9-10; *see also* Phelps Decl., Ex. I.

The first three time entries, August 26, 2010, September 14, 2010, and May 11, 2011, actually constitute block billing – which is permissible. On August 26, 2010, Transbay billed twelve hours for "PMK Depo (Northern California)." Fox Decl., Ex. A, Dkt. 138-2 at 16. On September 14, 2010, Transbay billed sixteen hours for "Travel to Oakland and back, attend depo." *Id.* And on May 11, 2011, Transbay billed 8.20 hours for "Attend and argue at Pre-Trial Conference." *Id.* at 29. These entries block bill travel time with the time spent performing the substantive task such as preparing and taking a deposition, or attending the pretrial conference. Therefore, the time recorded as time spent conducting activities in furtherance of the litigation is not inconsistent with the time entries themselves. For example, while the August 26, 2010 "PMK" deposition in "Northern California" lasted only 3 hours and 55 minutes, Transbay's attorney block billed twelve hours, presumably to account for both the deposition time and the travel time to and from Northern California to attend the deposition. While the September 14, 2010 deposition in Oakland lasted less than two hours, Transbay's attorney billed sixteen hours to account for both deposition time and "Travel[ing] to Oakland and back." And while the May 11, 2011 pre-trial conference lasted only 55 minutes, Transbay's attorney billed 8.2 hours to account for the conference and travel to and from the conference.

9

1  Chevron also contends that entries on October 30, 2008, September 13, 2010, and April 2, 2010
2  constitute over billing.  On October 30, 2008, Transbay billed one hour for time Mr. Bleau spent
3  "Review[ing] environmental report." Fox Decl., Ex. A, Dkt. 138-2 at 3.  Chevron contends that there
4  were "[n]o environmental issues in this case." Def.'s Opp'n (Dkt. 145), at 9.  As the Court noted above
5  in its discussion of pre-litigation fees, it was reasonable for Transbay to investigate the environmental
6  element and implications of this case as a pre-cursor to filing its lawsuit. Accordingly, the Court rejects
7  Chevron's contention that this entry amounts to over-billing.

8  On September 13, 2010, Transbay billed four hours for time Mr. Lebedev spent "S/W MC,
9  review disc., exhibits, prep for depo." Fox Decl., Ex. A, Dkt. 138-2 at 16.  As the Court noted above,
10 Transbay submitted a declaration explaining that "S/W" means "speak with." Fox Supp. Decl. I, ¶ 10.
11 Accordingly, this entry indicates that Mr. Lebedev spent four hours speaking with Megan Childress,
12 reviewing discovery and exhibits in preparation for a subsequent deposition, presumably the one he
13 attended the following day in Oakland.  Therefore, this entry does not amount to over-billing.

14 On April 2, 2010, Transbay billed one hour for time Mr. Lebedev spent "fu settlement brief, s/w
15 MC." Fox Decl., Ex. A, Dkt. 138-2 at 10.  Again, Transbay submitted a declaration explaining that "fu"
16 means "follow up." Fox Supp. Decl. I, ¶ 10.  Accordingly, this time was reasonably spent speaking with
17 Megan Childress and following up on the settlement brief and does not constitute over-billing.

18 The Court, however, agrees with Chevron that the September 13, 2010 time entry, in which
19 Megan Childress billed $650 for 2.50 hours to "prep for PMK depos," constitutes over-billing.  Fox
20 Decl., Ex. A, Dkt. 138-2 at 19.  The record indicates that the only "PMK" depo occurred on August 26,
21 2010.  *See* Phelps Decl. Ex. D.  The Court finds it unreasonable to bill to "prep" for a deposition after
22 the deposition has already taken place.  Accordingly, the Court finds it appropriate in its discretion to
23 reduce the total amount of attorneys' fees owed by $650.

### d. Travel time

26 Chevron contends that the travel time Transbay billed was unreasonably excessive.  It concedes
27 that Transbay is free to select the counsel of its choice, but argues that Transbay's decision to employ
28 non-local counsel does not automatically mean that Chevron should be accountable for the hours

10

1 Transbay's attorneys spent commuting to litigate the matter. Specifically, Chevron objects to eleven 2 time entries that include travel, which amount to a total of 100.15 hours, of which 65.65 hours are 3 alleged to be hours devoted exclusively to travel at a total cost of $17,622.50. *See* Phelps Decl., Ex. J 4 (listing objections to time specified in Fox Decl, Ex. A.).

5 While the Court may in its discretion reduce the fees owed related to travel, the Court may also 6 award travel time in full. *See McDonald v. Armontrout*, 860 F.2d 1456, 1463 (8th Cir. 1988). The 7 central inquiry is whether the time sought is reasonable.

8 The Court rejects Chevron's objection and declines to reduce the fees related to travel time for 9 two reasons. First, it is not clear that the 65.65 hours Chevron complains of were were entirely travel 10 hours. As noted above, Transbay explained that some of the time entries that include travel time also 11 include preparation time and meeting with clients. Second, the 65.65 hours complained of constitute 12 less than ten percent of the total number of hours, 804.59, that Transbay billed to litigate this case. This 13 ratio of travel time to litigation time is reasonable. Accordingly, the Court declines Chevron's invitation 14 to reduce the total attorneys' fees owed on account of excessive travel time.

### e. Multiplier

17 Transbay seeks a multiplier of 2 on the lodestar, arguing that it is warranted because of 18 "Chevron's scorched earth litigation strategy, the contingent nature of the representation, the difficulty 19 and complexity of the matters at issue and the results obtained." Pl.'s Mot. (Dkt. 138), at 10-11.[7]

---

[7] Throughout its briefing, Transbay argued that a multiplier of 2 should be added to the lodestar, resulting in a total of $425,000 in attorneys' fees. *See, e.g.*, Pl.'s Mot. (Dkt. 138), at 10-11. First, the Court notes that doubling Transbay's initial lodestar figure(s) does not result in $425,000. Second, to the extent that Transbay requests a multiplier based on "the contingent nature of the representation," *see id.*, it is barred as a matter of law, *see City of Burlington*, 505 U.S. at 567 (holding that enhancement for contingency is not permitted under the fee-shifting statute).

At the March 1, 2013 hearing, Transbay altered course and argued that in reaching the same $425,000 figure, it does not seek a multiplier on the lodestar, but instead seeks an upward adjustment of the hourly rates because it billed at lower rates than usual in this case to accommodate Transbay's limited ability to pay. Specifically, Transbay requests the Court apply a weighted rate of $528.22 per hour for the 804.59 hours billed, which totals $425,000 in fees, because (1) Mr. Bleau, Mr. Fox, and Mr. Rees currently charge $425 per hour, and (2) other firms in the community bill at rates closer to $500 per hour for similar types of cases. The Court finds this argument unavailing. First, Transbay never explicitly requested in its papers that the Court apply a weighted rate; it only sought a lodestar multiplier. Second, Transbay's counsel has provided no evidence that it actually discounted its rates here. In fact, the only evidence is that it charged Transbay its *customary rates* of $250 and $350 per

11

The Court may enhance the lodestar figure "where the applicant has met the burden of showing that 'such an adjustment is necessary to the determination of a reasonable fee.'" *Guam Soc'y*, 100 F.3d at 697 (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). There is, however, a "strong" presumption that the lodestar figure alone yields a reasonable fee, and an enhancement may only be awarded in "rare" and "exceptional" circumstances. *Perdue v. kenny A. ex rel. Winn*, 559 U.S. 542, 130 S.Ct. 1662, 1673 (2010) (internal citations and quotations omitted). Moreover, the lodestar figure "includes most, if not all, the relevant factors constituting a 'reasonable' attorneys' fee, . . . [and] an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Id.* (internal citations omitted).

Although the Court recognizes the PMPA is a specialize area of the law, and that Transbay's counsel achieved a favorable jury award close to the full difference between the appraisal presented by Transbay and the one presented by Chevron, this does not amount to a "rare" or "extraordinary" case. Accordingly, the Court declines to award a multiplier.

**C.     Fees on Fees**

Transbay seeks an award of attorneys' fees for the time spent litigating post trial motions, including the instant motion and defendant's motion for judgment as a matter of law and motion for a new trial. *See* Dkt. 148. Chevron does not dispute that Transbay's time litigating post trial motions is compensable under Section 2805(d) of the PMPA. Moreover, the Ninth Circuit has repeatedly held that time spent by counsel litigating fee awards is compensable. *See Davis v. City and County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992).

Transbay's supplemental fees brief (Dkt. 159) includes an additional 86.69 hours for post trial motions not included in Transbay's original fees request (Dkt. 138). In light of the substantial briefing

---

hour – not any discounted rate. Transbay's counsel cannot request a higher hourly rate now on account of a discount that never existed. Moreover, absent some additional evidence, the fact that Transbay's counsel *now* charges $425 per hour does not automatically mean that the rates it charged when counsel agreed to take the case five years ago were unreasonably low. Third, Transbay's counsel has not explained why *it* should be entitled to the weighted rate of $528.22 per hour; while it may be a reasonable rate for other lawyers in the field, there is no evidence that these particular lawyers are entitled to that rate. *See* Fox Supp. Decl. II, Ex. I. Accordingly the Court rejects this request for a weighted hourly rate.

12

that has occurred after the jury entered its verdict in this case, the Court finds that Transbay's time spent litigating the fee application and Chevron's post trial motions is reasonable.

### D. Costs

Transbay seeks $37,683.11 in expert fees, overhead costs, and the Court mandated Bill of Costs. *See* Fox Supp. Decl. II (Dkt. 159), Ex. J.

Chevron argues that the Court should deduct $3,404.34 from the total fees owed because these constitute unrecoverable "law firm overhead," including things such as "messenger charges, postage, electronic legal research, and parking." Transbay responds that they are ordinary out of pocket expenses that clients routinely pay. Fox Supp. Decl. I (Dkt. 150-1), ¶ 13.

The Court finds that the costs incurred by Transbay are recoverable because they are reasonable out of pocket expenses that would normally be charged to a fee paying client. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1215 n. 7. Accordingly, the Court declines to reduce the overall costs owed by Chevron.

### E. Summary

In sum, Transbay seeks an award of attorneys' fees totaling $243,939.25 for 804.59 hours of work at a reasonable hourly rate of $350 for senior attorneys, $250 for junior attorneys, and $75 for paralegals.[8] After reducing the total amount by $82.50 for .33 hours of work to account for the vague time entry, and by $650 for 2.5 hours of work that was over-billed, the Court awards Transbay attorneys' fees, expert fees,[9] and costs of $243,206.75.

---

[8] It appears that in calculating the total fee sum for senior attorneys, junior attorneys, and paralegals, Transbay came up with a total of $244,594.25. The Court added each sum for each independent category listed in Martin Fox's second declaration and reached a different total.

[9] Chevron does not object to Transbay's expert fees. The Court finds that the rate, hours, and fees charged by Transbay's experts, Junius and Plaine, are reasonable. *See* Fox Decl., Exs. B, C.

13

## II. Exemplary Damages

Transbay seeks an award of exemplary damages against Chevron based upon Chevron's wilful disregard of the PMPA's requirement that Chevron, as a franchisor seeking to sell a service station property, provide Transbay, as the franchisee, with a "bona fide" offer. Specifically, Transbay contends that Chevron made two offers to sell the service station property to Transbay with full knowledge that neither offer approached fair market value and accordingly that neither amounted to a bona fide offer. Moreover, Transbay argues that Chevron's refusal to reduce the purchase price even after it was presented with counteroffers well below its original selling price constituted wilful disregard warranting an award of exemplary damages.

The PMPA provides that a prevailing franchisee is entitled to an award of exemplary damages, "where appropriate," if the franchisor acted in "willful disregard of the requirements of [15 U.S.C.] section 2802 or 2803 . . . ." 15 U.S.C. § 2805(d)(1)(B); *see also Mustang Mktg., Inc. v. Chevron Products Co.*, 406 F.3d 600, 610 (9th Cir. 2005). "The question of whether to award exemplary damages and the amount of any such award shall be determined by the court and not by the jury." 15 U.S.C. § 2805(d)(2). Neither the PMPA nor its legislative history defines the standard to be applied in determining whether a franchisor acted in "wilful disregard" of the statutory requirements, but in common usage, the word "wilful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional." *See Mustang Mktg., Inc.*, 406 F.3d at 610. The phrase "wilful disregard" has been interpreted to mean that a franchisor "either knew its conduct was prohibited by the PMPA or if the franchisor acted with plain indifference to its prohibitions." *Id.* (quoting *Eden v. Amoco Oil Co., Inc.*, 741 F. Supp. 1192, 1195 (D. Md. 1990)). "When the courts have considered the term 'wilful disregard' with respect to the PMPA, they have been reticent to award exemplary damages absent a clear and affirmative showing of a deliberate and intentional act on the part of the defendant." *Id.*

Transbay has failed to demonstrate that Chevron acted in wilful disregard of the requirement that it provide a bona fide offer to sell the service station property. The case here turned squarely on a factual dispute – the effect on the market value of a San Francisco ordinance precluding the closing and redevelopment of the service station without government approval. Both Transbay and Chevron

14

obtained expert appraisals that valued the property at different prices in light of their respective determinations regarding the effect of the ordinance. There is no evidence that these reports were obtained or prepared in bad faith. While the jury did find that Chevron had violated the PMPA by not making a bona fide offer to sell the service station property, the mere fact that a violation occurred does not mandate a finding that the violation was wilful. By simply showing that Chevron made what it views as bad pricing decisions, Transbay has not shown that Chevron's pricing decision was unlawful. Instead, as Chevron suggests, evidence offered at trial shows that Chevron's decisions were the product of its internal economic and marketing strategy. *See* Def.'s Opp'n., at 2-3. Therefore, the Court finds that Chevron did not act in wilful disregard of the PMPA's mandate to provide a bona fide offer to sell the service station property, and accordingly Transbay is not entitled to exemplary damages.

### III.  Pre-judgment Interest

Transbay requests that the Court increase the pre-judgement interest rate from 0.19% annum – the statutory 52-week U.S. treasury bills rate – to 8% per annum to account for the period between when the sale of the service station closed until the date of judgment. Transbay presents three justifications: (1) this action is "primarily a contract dispute," and had this case been litigated in California state court, the court would have applied a pre-judgment interest rate at 10% per annum; (2) the Court should take judicial notice of the fact that during the period between when the property was sold and time of judgment, the country was in a "severe recession and th[e] Fed ha[d] used its control over interest rates to stimulate the economy"; and (3) had Chevron made a bona fide offer as required by the PMPA, Mr. Tsachres would not have been forced to take out an additional loan at an interest rate ranging from 4.99% to 14.95%, requiring him to "draw down on his home equity line and all of his other lines and credit cards." Pl.'s Mot. (Dkt. 138), at 10-11.

The Ninth Circuit has made clear that prejudgment interest is an element of compensation and is not a penalty. *Western Pacific Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1288 (9th Cir. 1984). "Whether interest will be awarded is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." The post-judgment interest rate, set at the rate equal to that paid on 52-week U.S. treasury bills as set by 28 U.S.C. § 1961, is the same rate that should

15

be applied to pre-judgment interest "unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate." *Western Pacific Fisheries, Inc.*, 730 F.2d at 1288-89. Thus, in light of this circuit's strong policy in favor of the Treasury bill rate, any departure from it must be accompanied by reasoned and substantial justification. *See id.*

The Court finds that Transbay has failed to demonstrate substantial equities sufficient to overcome the strong presumption against departing from the Treasury bill rate. Transbay concedes in its papers that "Mr. Tsachres testified that he had to draw down on his home equity line and all of his other lines and credit cards. He also testified as to the amounts and interest rates on [the additional loan.]" Pl.'s Mot. (Dkt. 138), at 12. At the March 1, 2013 hearing, Transbay also conceded that it made the same arguments to the jury in seeking higher damages that it now proffers to support its argument for increased pre-judgment interest. In awarding Transbay damages, the jury took into account these very same arguments and decided that $495,000 was appropriate. While it is the Court, not the jury, who must set the pre-judgment interest rate, the Court will not exercise its discretion to increase the pre-judgment interest rate where the jury weighed the very same issues in setting damages. Accordingly, the Court rejects Transbay's request for an increase in the pre-judgment interest rate and applies only the 0.19% Treasury bill rate as calculated by Transbay.

## CONCLUSION

For the foregoing reasons and for good cause shown, Transbay's motion for (1) an award of reasonable attorneys' fees is GRANTED IN PART; (2) an award of exemplary damages is DENIED; and (3) a determination that a higher pre-judgment interest rate is justified is DENIED.

**IT IS SO ORDERED.**

Dated: March 6, 2013

SUSAN ILLSTON
United States District Judge